**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| | ) |
| | ) |
| vs. | )  Crim. No. 17-122 |
| | )  Judge Nora Barry Fischer |
| GARY MILLS, | ) |
| | ) |
| | ) |
| Defendant, | ) |

## MEMORANDUM OPINION

### I.     INTRODUCTION

In this criminal tax case, Defendant Gary Mills ("Defendant") is charged with three counts of knowingly filing false tax returns for the 2012, 2013 and 2014 tax years, in violation of 26 U.S.C. § 7206(1).  (Docket No. 1).  Presently before the Court are a contested motion to compel filed by Defendant and cross-motions filed by Defendant and the Government concerning a proposed subpoena to be issued on Matthews International, Inc., ("Matthews"), which has joined the Government's motion to quash the subpoena.  (Docket Nos. 21; 25; 36; 65).  The motions have been extensively briefed by the parties and the Court held oral argument on the discovery motion on November 30, 2017 and on the subpoena motions on December 14, 2017.  (Docket Nos. 61; 72; 76).  The parties and Matthews also filed post-hearing briefs and the latest of such filings was a notice or status report submitted by the Government on March 5, 2018.  (*See* Docket Nos. 64; 65; 69; 70; 74; 75; 77; 79; 81; 83).  During this litigation, the parties have narrowed their discovery disputes considerably and the Government has produced numerous items to the defense and/or made certain materials available for inspection.  (*See* Docket Nos. 75; 83).  After careful consideration of the parties' positions and for the following reasons, Defendant's Motion to

Compel and Motion for Rule 17(c)(1) Subpoena [21], [25] are denied and the Government's Motion to Quash [36], joined by Matthews, is granted.

II.     BACKGROUND

Defendant and Cynthia Mills ("Cindy") were married in 1994 and filed joint tax returns from 1994 until 2015.  (Docket No. 21).  Defendant worked as a driver for UPS from approximately 1999 to 2014, at which time he retired and started a fishing business.  (Docket Nos. 21 at 2; 34 at 2; 76 at 52).  From 1981 to May 2015, Cindy Mills worked for Matthews as a cashier and treasury specialist. (Docket Nos. 34; 44-1)  Cindy Mills embezzled at least $12.9 million from Matthews between 1999 and 2015 and the couple did not report any of this income on their tax returns.  (*Id.*).  In 2008 or 2009, the IRS-CI opened a criminal investigation into the Mills' tax filings from 2003 through 2007 and closed it in 2010 due to insufficient evidence.  (*Id.*).  The matter was referred to a civil audit which was ultimately resolved in the summer of 2014 when the Mills paid approximately $225,000 in additional taxes, civil penalties and interest for the 2003 to 2007 tax years.  (*Id.*).

The IRS-CI opened a second criminal investigation of the Mills' activities in 2015.  (Docket No. 44-1).  Cindy Mills met with investigators on several occasions, waived indictment and pled guilty on March 15, 2017 to an Information charging her with one count of mail fraud; three counts of wire fraud; one count of tax evasion; and one count of money laundering.  *See United States v. Cynthia Mills*, Crim. No. 17-19.  On September 28, 2017, Cindy Mills was sentenced to 100 months' incarceration, followed by three years supervised release and was ordered to pay a $600 special assessment and restitution in the amount of $12,969,774.42.  (Crim. No. 17-19 at Docket No. 46).  A substantial forfeiture of property was also ordered and included,

among other things, a forfeiture money judgment in the same amount as the restitution, and numerous furs, an extensive jewelry collection, vehicles, boats, and bank account balances. (*Id.*).

The grand jury returned the Indictment against Defendant on May 2, 2017, charging him with three counts of filing false tax returns in violation of 26 U.S.C. § 7206(1). (Docket No. 1). Count One charges that on April 15, 2015, he willfully filed a false tax return for the 2014 tax year wherein he knowingly stated that the "other income" on line 21 was $1,517,926; "total income" on line 22 of $1,626,545; and "taxable income" on line 43 of $104,227, despite knowing that he and his wife had substantial additional "other income," "total income," and "taxable income" which were not reported. (*Id.*). Similarly, Count Two charges that on April 15, 2014, he willfully filed a false tax return for the 2013 tax year wherein he knowingly stated that the "other income" on line 21 was $606,275; the "total income" on line 22 was $716,360; and the "taxable income" on line 43 was $93,931, despite knowing that he and his wife had substantial additional "other income," "total income," and "taxable income" which were not reported. (*Id.* at 2). In a slightly different theory, Count Three charges that on August 1, 2014, he willfully filed a false amended tax return for the 2012 tax year wherein he reported an "adjusted gross income" of $350,485 and a "taxable income" of $108,698, despite knowing that he and his wife had substantial additional "adjusted gross income" and "taxable income" which were not reported. (*Id.* at 3).

The Government has made an extensive production of materials to the defense, as is evidenced by the 6 receipts of Local Criminal Rule 16 material filed in this case which are dated 6/15/17 (Rule 16); 7/21/17 (First Supplemental); 7/21/17 (Second Supplemental); 8/8/17 (Third Supplemental); 10/2/17 (Fourth Supplemental); and 12/14/17 (Fifth Supplemental). (Docket Nos. 16; 18; 19; 30; 51; 71). The parties exchanged correspondence regarding these discovery disputes dated June 26, 2017 (from defense counsel) and July 12, 2017 (from the prosecutor). (*See* Docket

Nos. 21-4; 21-5; 21-6). The defense also reviewed certain other materials which were made available for inspection on July 21, 2017 and December 15, 2017. (*See* Docket Nos. 21; 74; 83).

Defendant filed his motion to compel on July 27, 2017, (Docket No. 27), and the subpoena motion on August 1, 2017,[1] (Docket Nos. 25, 27). After receiving an extension of time, the Government filed its response on August 18, 2017, (Docket No. 34), and a corresponding motion to quash the subpoena on August 21, 2017, (Docket No. 36). Defendant submitted his joint response/reply addressing these motions on September 8, 2017. (Docket Nos. 39; 44). The Government countered with its sur-reply/reply as to the motions on September 29, 2017. (Docket No. 47). The defense then submitted a sur-reply on October 25, 2017. (Docket Nos. 53; 54).

The Court ordered the parties to confer and file a chart outlining their discovery disputes and also directed the Government to file a notice of its suggested modifications to the subpoena and both were filed prior to the commencement of the November 30, 2017 hearing. (Docket Nos. 59; 60). The Court then heard oral argument on the discovery motion [2] and set a follow-up hearing on December 14, 2017 as to the subpoena issue, inviting Matthews to participate, which it did through counsel. (Docket Nos. 61; 72; 76). On the discovery issues, the Government filed a supplemental brief on December 6, 2017. (Docket No. 64). With respect to the cross-motions on the subpoena, Matthews filed a brief in support of the Government's motion to quash on December 12, 2017, (Docket No. 65), to which the defense submitted a response on December 14, 2017, (Docket No. 69), and the Government replied on the same day, (Docket No. 70). The Court then

---

[1] The Court notes that it has entered summary orders on a number of additional motions filed by the defense. To this end, on August 3, 2017, the Court granted Defendant's motion to withdraw a second motion for a subpoena to be served on his own employer, UPS. (Docket No. 29). The Court also denied his motion for a bill of particulars on September 8, 2017 based on the defense's concession that such motion was mooted by the Government's response. (Docket No. 41). Finally, the Court entered an order on February 28, 2018, denying Defendant's second motion to compel, as moot, after he was provided with access to all of the requested bank records. (Docket No. 82).

[2] The transcript of this hearing was filed on January 5, 2018, (Docket No. 76), and has been considered by the Court.

heard oral argument from counsel for the parties and Matthews on December 14, 2017.[3]  (Docket No. 72).

Post-hearing briefing was ordered by the Court as to Cindy Mills' employment file and the Matthews' production to the Government, with all of the following submissions having been made by the parties: the Government's notice of undisclosed documents on December 19, 2017, (Docket No. 74); Defendant's response to same on December 20, 2017, (Docket No. 75); Defendant's supplemental brief regarding the employment file on January 5, 2018, (Docket No. 77); the Government's supplemental brief on the employment file on January 21, 2018, (Docket No. 79); and, Matthews' supplemental brief as to the employment file on February 1, 2018, (Docket No. 81).  Matthews declined to file a supplemental brief on the production issues by the Court's deadline of February 16, 2018.  Finally, the Government provided a notice concerning the status of discovery on March 5, 2018.  (Docket No. 83).  As the motions have been exhaustively briefed, they are now ripe for disposition.

III.     CROSS-MOTIONS ON PROPOSED DEFENSE SUBPOENA TO MATTHEWS

The Court first turns to the cross-motions on the proposed subpoena which Defendant would like to serve on Matthews.  (Docket Nos. 25; 27; 36).  The subpoena initially sought the following:

> 1. All Forms W-2, 1099s, etc. issued by Matthews International (or its subsidiaries) to Cynthia Mills and/or Gary Mills.
>
> 2. All communications between Matthews International (including legal counsel) and the U.S. Government about any illegal activities engaged in by Cynthia Mills.

---

[3]     The transcript of this hearing was not ordered by the parties and has not been filed of record.  The Court considered a rough version of same and its notes from the hearing.  Any references to same will be to *12/14/17 Hrg. Trans.*

3. All communications between Matthews International (including legal counsel) and the U.S. Government about any illegal activities engaged in by Gary Mills.

4. Any documents Matthews International (including legal counsel) furnished to the U.S. government as part of its investigation into the illegal activities of Cynthia Mills or Gary Mills.

5. A copy of Cynthia Mills's employment file.

(Docket No. 27-1). During pre-hearing briefing and argument, the parties slightly modified their positions as to these requests. (Docket Nos. 25; 27; 36; 39; 47; 53; 58). After Matthews joined and opposed the issuance of a subpoena in its entirety, the Government returned to its initial position. (Docket Nos. 65; 69; 70; 72; 74; 77; 79; 81). Matthews also confirmed that it spent in excess of $100,000 producing over 38,000 pages of information to the Government which included its forensic accounting and banking records relating to the entire period of the embezzlement from 1999-2015 and Cindy Mills' employment file consisting of 57 pages labeled MATW0025086-MATW00025142. (Docket No. 81). The parties agree that the Government has, in turn, produced the forensic accounting and banking records for the years of 2012-2014 to the defense but withheld the employment file. (Docket Nos. 77; 79; 81). Having carefully considered all of the arguments from Matthews and the parties, the Court holds that the subpoena must be quashed.

### a. Legal Standard

"[R]ule 17(c) is designed as an aid for obtaining relevant evidentiary material that the moving party may use at trial." *United States v. Cuthbertson*, 630 F.2d 139, 144 (3d Cir. 1980). In order for the court to grant pre-trial production through a Rule 17(c) subpoena duces tecum, the proponent of production must show: "(1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance

of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.'" *United States v. Nixon*, 418 U.S. 683, 699-700 (1974).

"Whether presented to the court as a request for quashal or issuance of a subpoena, the burden is on the party seeking the subpoena duces tecum to show that he or she is entitled to production of the evidentiary objects which are the subject of the subpoena." *United States v. Brown*, Crim. No. 11-193, 2012 WL 1655733, at *1 (W.D. Pa. May 10, 2012) (Conti, C.J.). The party seeking production must "clear three hurdles: (1) relevancy; (2) admissibility; [and] (3) specificity." *Nixon*, 418 U.S. at 700. "These specificity and relevance elements require more than the title of a document and conjecture as to its contents." *United States v. Nagle*, 2010 WL 2573855 (M.D. Pa. June 23, 2010) (citing *United States v. Arditti*, 955 F.2d 331, 346 (5th Cir. 1992)). Rule 17(c) subpoenas are not intended to provide a means of discovery in criminal cases. *Nixon*, 418 U.S. at 699. Indeed, "courts must be careful that [a] Rule 17(c) [subpoena] is not turned into a broad discovery device, thereby undercutting the strict limitation of discovery in criminal cases found in Fed.R.Crim.P. 16." *Cuthbertson*, 630 F.2d at 146. "[M]ore is needed to sustain a subpoena than the defendant's own subjective belief (i.e., hope) that he or she may find something useful by casting a subpoena upon the waters." *United States v. Eisenhart*, 43 F. App'x 500, 505 (3d Cir. 2002).

*b. Discussion*

At the outset, the Court finds that the subpoena is moot as to the first request for all "W2s, 1099s, etc." from Matthews regarding Defendant or Cindy Mills. To this end, the parties and Matthews agree that Defendant never worked as an employee or contractor at Matthews such that it would not have issued him tax forms indicating that he earned taxable income from the company.

(Docket No. 72; *12/14/17 Hr'g Trans.*).  Defense counsel also conceded at the December 14, 2017 hearing that the Government has provided Defendant with all of the pertinent tax forms that Matthews issued to Cindy Mills.[4]  (*Id.*).  Hence, following *Nixon*, there is no basis for the subpoena to issue because Defendant already has all such documents making them "otherwise procurable" by the defense "reasonably in advance of trial," *Nixon*, 418 U.S. at 699-700.  Accordingly, Defendant's subpoena request to Matthews for all "W2s, 1099s, etc." must be quashed and/or denied, as moot.

With respect to the remaining requests seeking broad categories of documents such as "all communications," "any documents," and the like, it is quite evident that "defendant improperly uses the subpoena mechanism as a discovery technique, to ascertain whether documents exist." *Brown*, 2012 WL 1655733, at *2.  "[R]ule 17(c) is designed as an aid for obtaining relevant evidentiary material that the moving party may use at trial." *Cuthbertson*, 630 F.2d at 144.  Stated another way, Rule 17(c) is a vehicle to obtain known, ascertainable evidence from a third party that is relevant to the charged conduct, meaning that Defendant can only obtain Court approval of a Rule 17(c) subpoena by pointing to specific, admissible evidence that is relevant to the three counts of filing false tax returns for tax years 2012-2014 which he faces in this case.  *Brown*, 2012 WL 1655733, at *1. Defendant has failed to do so because he has attempted to serve broad subpoena requests akin to civil discovery on Matthews based upon defense counsel's subjective belief or hope that something relevant may be found.  *See United States v. Kubini*, Crim. No. 11-14, 2013 WL 5963392, at *3 (W.D. Pa. Nov. 7, 2013) ("Hope does not suffice" to justify the issuance of a Rule 17(c) subpoena).  Although Defendant has experience as a fishing boat captain,

---

[4]      The Court notes that the Government has provided the defense with certified IRP files from the IRS regarding the tax years in question.  (*See* Docket No. 74).  This is one of the many discovery disputes which the parties resolved.

the Federal Rules of Criminal Procedure do not permit the Court to authorize this type of general fishing expedition through Matthews' files and records.

The defense's discovery strategy is best exemplified in Defendant's Response Brief filed on the morning of the hearing, i.e., December 14, 2017, wherein defense counsel posited that the Government had withheld an 81-page document which he speculated must have been a "refined product" containing a description of Cindy Mills' embezzlement activities and Matthews' computations of losses it sustained as a result of same. (Docket No. 69). Counsel further assumed that by producing this "refined product" to the Government, Matthews had waived any claim of privilege (attorney-client, work product, or otherwise) to the documents. (*Id.*). At the hearing, defense counsel admitted that he was "speculating" but reasoned that he was making more of an educated guess based on "common sense." *See 12/14/17 Hr'g Trans*. However, courts have recognized that it is not enough to obtain a Rule 17(c) subpoena to point to the title of a <u>known document</u> and speculate as to its contents. *Nagle*, 2010 WL 2573855. Given same, it surely cannot be enough for counsel to review Bates numbers on a massive document production, identify missing numbers in the Bates sequence and then jump to the conclusion that the missing pages must contain information that is admissible at trial.

With that said, the Government later confirmed that the defense had already received the documents upon which counsel rested his position, i.e., the alleged "refined product." (Docket No. 74). As the prosecutor explained, the missing Bates numbers were simply the result of duplicate pages within the massive 38,000-page production by Matthews to the Government containing forensic accounting and banking records relating to the entire period of the embezzlement from 1999-2015. (*Id.*). Matthews likewise confirmed that no such "refined product" was ever produced to the Government and that the company had not waived privilege

with respect to any internal investigation that it may have conducted. *See 12/14/17 Hr'g Trans*. The Government also noted that it produced any records to the defense that it received from Matthews for the relevant time frame for the tax charges in this case, i.e., 2012 to 2014. (Docket No. 74). Therefore, Defendant's second, third and fourth requests are denied, as moot, because the second and third requests sought non-existent documents and the fourth request asking for records Matthews produced to the Government is naturally procurable from another source, i.e., the Government. *Nixon*, 418 U.S. at 699-700.

The final dispute concerns the defense's attempt to subpoena Cindy Mills' entire "employment file" from Matthews, to which both the Government and the company object. Initially, Matthews and the Government confirmed that the employment file is in the possession of the Government as it was within the larger 38,000-page production and the subpoena request can be quashed on this basis alone.[5]  *Nixon*, 418 U.S. at 699-700.

The Court further finds that the request fails to meet the standards of relevancy, admissibility and/or specificity required for a Rule 17(c) subpoena to issue. To this end, several courts have persuasively rejected defense attempts to obtain access to potential government witnesses' entire employment files or disciplinary records. *See e.g., Brown*, 2012 WL 1655733, at *1-2 (quashing subpoena served on Citizens Police Review Board for "all records" relating to police officers scheduled to testify at a hearing as it was speculative); *United States v. Newby*, 251 F.R.D. 188, 189-190 (E.D. N.C. 2008) (refusing to issue defendant's requested subpoenas duces tecum for police officers' employment files for suppression motion hearing); *United States v. Jasper*, 2003 WL 1107526 (S.D. N.Y. 2003) (quashing subpoena for employment file of government witnesses). In addition to the general lack of specificity, these types of requests are

---

[5]       The Court separately evaluates the defense's corresponding request for the employment file from the Government in the next section of this Opinion as well as any privacy interests therein.

denied because the real value of a potential witness's employment file is for impeachment purposes but "impeachment materials do not ripen into 'evidence' for the purposes of Rule 17(c) until such time as a witness actually testifies." *Brown*, 2012 WL 1655733, at *1 (W.D. Pa. May 10, 2012); *see also Cuthbertson*, 630 F.2d at 144 ("[R]ule 17(c) permits a party to subpoena materials that may be used for impeaching a witness called by the opposing party .... However, because such statements ripen into evidentiary material for purposes of impeachment only if and when the witness testifies at trial, impeachment statements, although subject to subpoena under rule 17(c), generally are not subject to production and inspection by the moving party prior to trial."). Since neither a trial date nor a deadline for the production of impeachment materials have been set, any requests for impeachment materials are premature.

It is also this Court's opinion that the request for Cindy Mills' "employment file" is overly broad because the 57 pages of documents would likely contain a significant amount of irrelevant information. To this end, she worked at Matthews for approximately thirty-seven years but her embezzlement scheme was "only" operational for half of her career, (i.e., 1999-2015), while the tax charges against her husband relate to just three of those years, (i.e., 2012-2014). Given same, it is entirely speculative to conclude that the information in Cindy Mills' employment file includes relevant information which would also be admissible at the trial in this case. *Nagle*, 2010 WL 2573855.

Further, Defendant's attempts to more narrowly define this request as seeking information concerning Cindy Mills being placed on restrictive duty by Matthews during the prior criminal investigation in 2009 or 2010 and/or any information concerning her bonuses or commendations from Matthews fail for similar reasons. (Docket Nos. 69; 77). While these requests are more focused, they are still more akin to civil discovery in seeking unknown and potentially relevant

documents rather than specific evidentiary objects as Rule 17(c) permits. To reiterate, it is not enough to point to a <u>known document</u> and speculate as to its contents, *Nagle*, 2010 WL 2573855, so this Court cannot permit Defendant to take broader aim at a 57-page file folder containing multiple documents and making guesses, educated or not, as to what is included therein. As has already been explained above, it is the antithesis of Rule 17(c) to subpoena broad categories of documents in the hope that something relevant may be identified and recovered. *See Eisenhart*, 43 F. App'x at 505 (while "defendant's subpoena may be motivated only by the venerable principle of 'nothing ventured, nothing gained,' more is needed to sustain a subpoena than the defendant's own subjective belief (i.e., hope) that he or she may find something useful by casting a subpoena upon the waters."). Therefore, the subpoena of the employment file must be quashed.

### c. Conclusion

For all of these reasons, the Government's motion to quash, joined by Matthews, is granted and Defendant's motion for a subpoena is denied.

## IV. MOTION TO COMPEL

The Court next addresses the parties' disputes with respect to the defense motion to compel. (Docket Nos. 25; 27). As noted, during this litigation, the parties have significantly reduced the number of discovery disputes for the Court's resolution and the Government has made a rolling production of certain documents and made others available for inspection. (Docket Nos. 59; 71; 75; 83). Given same, the Court focuses on the remaining disputes which Defendant has summarized as seeking: unredacted versions of Cindy Mills' memoranda of interviews; witness statements pertaining to Cindy Mills' "scheme"; Cindy Mills' employment file; certain unidentified documents from the IRS Civil Audit file; and IRS CIMIS timesheets from the prior criminal investigation. (Docket Nos. 75; 83). Defendant argues that these materials should be

produced under Rule 16(a)(1) and *Brady v. Maryland*, advocating they are material to his defense in this case. (Docket No. 27; 44; 53; 75; 77). In turn, the Government opposes each of these discovery demands and contends that it has more than satisfied its discovery obligations at this early stage of the proceedings. (Docket Nos. 34; 64; 70; 74; 79). The Court once again agrees with the Government that the instant discovery motion must be denied.

### a. Legal Standard

"Criminal pretrial discovery is, of course, vastly different from discovery in civil cases." *United States v. Ramos*, 27 F.3d 65, 67 (3d Cir. 1994). The United States Court of Appeals for the Third Circuit has "long held that Rule 16 is not to be used as a tool for general evidence-gathering prior to trial." *United States v. Maury*, 695 F.3d 227, 254 (3d Cir. 2012), *cert. denied sub nom. Atl. States Cast Iron Pipe Co. v. United States*, ⸺ U.S. ⸺, 133 S.Ct. 1600, 185 L.Ed.2d 581 (2013) (citation omitted). "Rule 16 does not require the prosecution to disclose all the minutia of its evidence, to reveal its trial strategy, and to delineate with total specificity the case it intends to present." *United States v. Randolph*, 456 F.2d 132, 136 (3d Cir. 1972) (internal quotation omitted). Instead, Rule 16 directs the Government to disclose certain categories of evidence to the defense upon request, (e.g., a defendant's oral, written or recorded statements; any prior criminal record; documents and objects in the Government's possession which are material to the defense; and reports of examinations and tests in the government's possession). *See* FED. R. CRIM. P. 16(a). "Materiality to the preparation of the defense within the meaning of this rule means 'more than that the evidence in question bears some abstract logical relationship to the issues in the case. There must be some indication that the pretrial disclosure of the disputed evidence would ... enable the defendant significantly to alter the quantum of proof in his favor.'" *United States v. House*, Crim. No. 09-273-03, 2015 WL 6134031, at *3 (W.D. Pa. Oct. 16, 2015) (quoting *United States*

*v. Maniktala*, 934 F.2d 25, 29 (2d Cir.1991)).  At the same time, Rule 16 clearly provides that other categories of evidence are not subject to disclosure under such Rule, including internal government memoranda and reports generated during its investigation; Jencks Act statements, 18 U.S.C. § 3500; and grand jury transcripts. *See* FED. R. CRIM. P. 16(a)(2) and 16(a)(3).

"Under *Brady*, the government has an obligation to disclose all evidence that is favorable to the accused and material either to guilt or punishment."  *United States v. Suastegui*, 529 F. App'x 129, 131-32 (3d Cir. 2013), *cert. denied*, 134 S. Ct. 353 (2013). "Evidence is 'material' if there is a reasonable probability that, 'had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Maury*, 695 F.3d at 249 (quotation omitted). "Material evidence can include evidence that may be used to impeach a witness." *United States v. Friedman*, 658 F.3d 342, 358 (3d Cir. 2011) (citation omitted). This Court "has general discretionary authority to order the pretrial disclosure of *Brady* material 'to ensure the effective administration of the criminal justice system.'" *United States v. Starusko*, 729 F.2d 256, 261 (3d Cir. 1984) (quoting *United States v. Higgs*, 713 F.2d 39, 44, n.6 (1983)).

> *b. Discussion*

At the outset, the Court will enter a detailed Pretrial Order establishing deadlines for the Government to produce *Brady* and *Giglio* impeachment materials as well as Rule 404(b) evidence that the Government plans to introduce at trial on a date certain well in advance of trial.  *See Practices and Procedures of Judge Nora Barry Fischer*, Exhibit "I", *available at*: http://www.pawd.uscourts.gov/sites/pawd/files/PandPJudgeNoraBarryFischer.pdf (eff. 9/16/17). The prosecutor asserts that the Government understands its responsibilities to produce exculpatory materials to the defense and will supplement its production, as necessary.  (Docket No. 34).  The Government has also agreed to produce Jencks Act and impeachment materials seven days in

advance of trial. (*Id.* at 31). In light of same, the parties' *Brady* disputes are prematurely raised at this juncture of the case. With that said, several points are worth noting.

First, as to the defense request for unredacted portions of Cindy Mills' memoranda of interviews and statements of other potential government witnesses, statements of this type are properly withheld under Rule 16(a)(2) and the Jencks Act, unless the content of same is deemed material evidence under Rule 16(a)(1) or exculpatory pursuant to *Brady*. *See* FED. R. CRIM. P. 16(a)(2); 18 U.S.C. § 3500. Although the Court presided over Cindy Mills' case, it has not been provided with unredacted versions of the interview memoranda nor reviewed same. While the parties have ably argued their respective positions, it is "unwise to infer the existence of *Brady* material based on speculation alone," *Ramos*, 27 F.3d at 71, and the Court would be at least to some degree speculating by wading into this dispute at this early juncture of the case without reviewing those materials. It is also unclear if Cindy Mills will be called as a witness at trial[6] or the scope of her testimony and "it is difficult to analyze, prior to trial, whether potential impeachment evidence falls within *Brady* without knowing what role a certain witness will play in the government's case." *Starusko*, 729 F.2d at 261. In any event, the law is firmly established that "[n]o denial of due process occurs if *Brady* material is disclosed to [a criminal defendant] in time for its effective use at trial." *Higgs*, 713 F.2d at 44. Hence, the Court believes that Defendant's due process rights are sufficiently protected by the procedures the Court will employ

---

[6] The Court notes that if Cindy Mills is called as a Government witness, the defense has also been provided with a substantial amount of *Giglio* material, some of which the Court recently referenced in an Order denying her request for a post-sentencing recommendation that she be admitted to the Bureau of Prisons Residential Drug Abuse Program. (*See* Crim. No. 17-19, Docket No. 52 ("the record is replete with instances of Defendant making false statements and engaging in dishonest behavior, as she, among other things, embezzled millions of dollars from her employer from at least 1999 through 2015, committed tax evasion, failed two polygraph examinations administered by the Government during its investigation of her activities, and breached her initial plea agreement with the Government by hiding additional assets such that her agreed-upon sentence was increased from 90 months' incarceration to 100 months' incarceration in the amended plea agreement.")). With that said, it is unclear if this information is truly helpful to the defense since he wants to rely upon his wife's claims that he did not know about her embezzlement.

of establishing deadlines for the Government's production of *Brady* material in its Pretrial Order, making the present disputes premature.

Second, the Court concurs with the Government's position that the asserted failures of Matthews, its outside counsel and auditors and/or the IRS to identify the embezzlement scheme during the earlier investigations are not directly exculpatory to Defendant as it pertains to the charges he faces in this case. In this regard, the pending Indictment charges Defendant with filing false tax returns for the tax years of 2012-2014 through tax filings made on April 15, 2014 (Form 1040 for 2013 tax year); August 1, 2014 (Form 1040X for 2012 tax year); and April 15, 2015 (Form 1040 for 2014 tax year). (Docket No. 1). The elements of the offense of filing a false tax return are: "(1) defendant made and subscribed a return which was false as to a material matter; (2) the return contained a written declaration that it was made under the penalties of perjury; (3) defendant did not believe the return was true and correct as to every material matter; and (4) defendant falsely subscribed to the return willfully, with the specific intent to violate the law." *United States v. Gollapudi*, 130 F.3d 66, 71-72 (3d Cir. 1997). The parties agree that the couple did not report more than $4 million in income generated by Cindy Mills' scheme during 2012-2014. Thus, the issues in this case concern Defendant's knowledge of the falsity of the challenged statements regarding these specific returns and his willfulness, i.e., his subjective intent to violate a known, legal duty when filing the returns. *See United States v. Basile*, 570 F. App'x 252, 257 (3d Cir. 2014) (quoting *United States v. Cheek*, 498 U.S. 192, 201-02 (1991)).

Initially, the source of the unreported income is not an essential element of the charged tax offenses; what the Government must prove is that the couple had unreported income and it intends to do so under the specific items method, pointing to the exorbitant spending by the Mills during 2012-2014 in relation to the income he and his then wife reported on their returns. *See e.g.*, *United*

*States v. Fairchild*, 819 F.3d 399, 412 (8th Cir. 2016) ("As the government points out, requiring the jury to decide unanimously whether the unreported income came from Karlen, Pietz, or another source was unnecessary because it was not an essential element of the crime; each source provided alternative pieces of evidence to support each count of the indictment."); *United States v. Lawrence*, 557 F. App'x 520, 527 (6th Cir. 2014); *United States v. LaSpina*, 299 F.3d 165, 179 (2d Cir. 2002) ("the source of unreported income is not an essential element of an offense under 26 U.S.C. § 7206(1)."). Further, it is well established that it is not a defense to fraud charges for a perpetrator like Cindy Mills to claim that the victim of the scheme was negligent or lacked diligence in uncovering her misdeeds. *See e.g.*, *United States v. Rennert*, 374 F.3d 206, 213 (3d Cir. 2004) (a "fraud victim's negligence or lack of diligence in uncovering the fraud is not a defense."); *United States v. Hoffecker*, 530 F.3d 137, 177 (3d Cir. 2008) (upholding instruction that "the negligence of a victim was not a defense to the charged crimes."); *United States v. Lindsey*, 850 F.3d 1009, 1015 (9th Cir. 2017) ("[A] victim's negligence is not a defense to wire fraud."). Likewise, any failures by Matthews, the IRS and/or other entities to uncover the fraud scheme during the investigations into the Mills' tax filings for 2003-2007 do not provide a defense to the pending charges relating to the Mills' unreported income in 2012-2014. *See e.g., United States v. Bailey*, 699 F. App'x 664, 665–66 (9th Cir. 2017) ("This denial of discovery by the district court was not an abuse of discretion. Whether Bailey owed taxes in 1998 was not an element of the 2004-2011 tax evasion charged in this case, and he ultimately was convicted based on those 2004-2011 tax returns, not on his failure to file a tax return in 1998. Proof that his 1998 tax liability was the product of fraud, assuming that could have been established, would have had nothing to do with his tax liability for the years 2004-2011.").

As to Defendant's own knowledge, he seeks expansive discovery based upon an "innocent spouse" defense which Courts have recognized may be available to taxpayers in civil proceedings but is not a defense to criminal tax charges. *See e.g., United States v. Valdes*, 681 F. App'x 874, 879 (11th Cir. 2017), *cert. denied*, 138 S. Ct. 526, 199 L. Ed. 2d 402 (2017) ("The district court did not plainly err by not applying the innocent spouse exception because the exception applies to tax liability, not criminal liability, and there is no binding precedent that extends it to criminal prosecutions for tax fraud. Therefore, [the defendant] cannot show there was an error that was obvious and clear under current law because neither this Court nor the Supreme Court have applied § 6013(e) in a criminal context.") (internal citation omitted); *United States v. Tilford*, 810 F.3d 370, 373 (5th Cir. 2016) ("The district court correctly concluded that Mrs. Tilford cannot employ the innocent spouse defense" to avoid criminal restitution order against her spouse.); *United States v. Tarrant*, 798 F. Supp. 1292, 1300 (E.D. Mich. 1992) ("The 'innocent spouse' defense is based on 26 U.S.C. § 6013(e)(1). That provision is applicable only in the civil context and not the criminal context."). He also has not proffered any evidence that he actually relied upon findings by those entities when he filed the challenged tax returns such that the proffered defense lacks a sufficient foundation. *See e.g., United States v. Zayyad*, 741 F.3d 452, 460 (4th Cir. 2014) ("the record before us contains no evidence of any actual reliance on [the defendant's] part that would justify use of the [challenged] evidence"). All told, it is this Court's opinion that the asserted negligence or lack of diligence by the IRS or Matthews and its team during the prior investigations are not relevant to the disputed issues of Defendant's own subjective knowledge of the falsity of his tax filings in subsequent years and his willfulness in making those returns.

Third, while there is no "due diligence" exception to *Brady*, *see Dennis v. Secretary, Pa Dept. of Corrections*, 834 F.3d 263, 292 (3d Cir. 2016), the Government is not obligated to provide

a defendant with information that is already in his possession. Thus, Defendant's repeated requests for materials about the manner and means of Cindy Mills' scheme is undermined because the record before the Court demonstrates that Defendant has already been provided with a significant amount of such information. To this end, the Government has laid out many details of the embezzlement in a number of documents provided to the defense, including:

- the Civil Forfeiture Complaint filed against Defendant and his wife at Civil Action No. 15-1274;

- the Application and Affidavit of Probable Cause in Support of Search Warrants of the couple's properties in McKees Rocks and DuBois at M.J. Nos. 15-933 and 15-43J; and,

- the Information filed against Cindy Mills at Criminal No. 17-19 containing the charges to which she pled guilty at a public proceeding her husband's counsel attended.[7]

Among other things, these documents demonstrate that Cindy Mills operated a check cashing scheme from 1999 through 2013 and thereafter transitioned to a wire transfer scheme from 2013 through May 2015. (*See generally* Docket No. 44-1). The embezzled monies were generally then deposited into accounts that Cindy Mills controlled, including some accounts jointly held with her father or in his name. (*Id.*). The Government has also produced all of the following: a breakdown of the monies embezzled from 1999 through 2015 prepared by an IRS Agent titled "Summary of Embezzlement"; three documents summarizing the checks stolen in 2012 and 2013; all of the bank accounts controlled by Cindy Mills, including information from the specific bank account which received the fraudulent wire transfers from 2013-2014; and, the documents produced by Matthews under a grand jury subpoena containing its forensic accounting and banking records for the relevant period of 2012-2014. (*See e.g.*, Docket No. 74). All of this information is in addition to

---

[7]   The transcript of Cindy Mills' waiver and plea hearing is publicly available on the docket of her case. (*See* Crim. No. 17-19, Docket No. 13). Her sentencing was likewise public although the transcript of that proceeding has not been ordered and filed on the docket.

the discovery related to the tax charges which has been provided to the defense and about which there is apparently no dispute, the Government having recently supplied the requested certified IRP files to Defendant.  It is also complimented by the unredacted portions of Cindy Mills' statements that her husband did not know of the embezzlement and outlining other potential sources of the money as well as the unredacted statements of third parties containing hearsay statements by Cindy Mills on the same topics.  (*See* Docket Nos. 39-2; 39-3; 39-4; 39-5; 39-6).  Finally, Defendant admits that he has received all of the evidence concerning the Mills' lavish expenditures during the relevant period.  (Docket No. 76 at 17).

Fourth, as to the employment file, at this point, all that is known is that it contains 57 pages, making it entirely speculative to conclude that it is material to the defense or exculpatory.  *See Ramos*, 27 F.3d at 71.  The defense theories that Matthews placing Cindy Mills on restrictive duty or providing her with bonuses or commendations during her employment, at most, support his contention that the company was negligent in failing to uncover her scheme.  But, he does not proffer that he was knowledgeable of any of these actions that Matthews may have taken prior to filing his 2012-2014 tax returns such that they are not material to the defense, for the reasons explained above.  On the question of whether the employment file is protected by privacy laws, Matthews has asserted no objection to its production under the current protective order between the Government and Defendant, along with necessary redactions of her personal identifiers.  (Docket No. 81).  It also appears that Cindy Mills has no current rights to access the file under Pennsylvania law, *see Thomas Jefferson Univ. Hosps., Inc. v. Pa. Dep't of Labor & Indus.*, 162 A.3d 384, 393 (Pa. 2017), but that the Government may be required under the federal Privacy Act, 5 U.S.C. § 552a(b), to notify her if it releases the documents to her husband.[8]  However, one of

---

[8]     Defense counsel has already taken the initial step of notifying her counsel that he is seeking such information. (Docket No. 77-2).  To the extent that there was some question concerning whether Cindy Mills remains represented,

the exceptions to the Privacy Act is a valid court order requiring production. *See* 5 U.S.C. § 552a(b)(11). As noted, the Court will set forth deadlines for the Government to produce *Brady*, *Giglio*, impeachment materials and Rule 404(b) evidence in its Pretrial Order which has yet to be entered. The Court further orders that the Government shall review Cindy Mills' employment file and produce any such materials located within same by the Court's deadline.

Fifth, the requested CIMIS time records of the agents involved in the earlier investigation are not subject to discovery for the reasons set forth above. Again, the fact that IRS agents spent many hours investigating in 2009-2010 but did not undercover the embezzlement is not relevant to the charges. In addition, while Defendant claims that this is a "minor ask" because the IRS would make such information available to his counsel when he previously served as a prosecutor, he has not cited any authority supporting a request by a criminal defendant seeking such information. (Docket No. 75 at 3-4). Indeed, the only authority located by the Court referencing CIMIS records in a criminal case denied the defendant's request. *See United States v. Musto*, Crim. 3:16CR90, 2016 WL 7015651, at *3–4 (M.D. Pa. Nov. 30, 2016) (denying request for CIMIS records and SAR reports).

Sixth, and finally, the Court has been apprised by the Government that the parties dispute whether two documents located by the defense within the IRS civil audit file are material to the defense or exculpatory under *Brady*. (Docket No. 83). While Defendant objected to the inspection procedure, his counsel inspected the file and flagged certain documents which the Government has refused to produce. (*Id.*). The Court has not been provided with any additional specifics concerning these two documents and it would be speculative to conclude that they constitute *Brady* or are material. *Ramos*, 27 F.3d at 71. At the motion hearing, the Court also strongly suggested

she filed the aforementioned motion requesting the recommendation to the RDAP Program through her counsel. (*See* Crim. No. 17-19, Docket No. 52).

that defense counsel take detailed notes as to any such documents when conducting this inspection. (*See* Docket No. 76 at 71). Accordingly, this particular aspect of the motion will be denied, without prejudice, and the Court will establish a deadline for the filing of any additional motions by the defense as to this dispute.

      *c. Conclusion*

For all of these reasons, Defendant's motion to compel [21] is denied.

V.      CONCLUSION

Based on the foregoing, the Government's motion to quash [36], joined by Matthews, is granted and Defendant's motions to compel [21] and seeking a subpoena [25] are denied. An appropriate Order follows.

*s/Nora Barry Fischer*
Nora Barry Fischer
U.S. District Judge

Dated: March 19, 2018

cc/ecf: All counsel of record.

      Gary Mills c/o Jed Silversmith, Esq.

      Matthews International, Inc. c/o Mark Rush, Esq.