IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Criminal No. 17-122 |
| GARY E. MILLS | |

**GOVERNMENT'S MOTION *IN LIMINE*
TO LIMIT OR PRECLUDE DEFENDANT'S EXPERT TESTIMONY**

AND NOW comes the United States of America, by its attorneys, Scott W. Brady, United States Attorney for the Western District of Pennsylvania, and Shardul S. Desai, Assistant United States Attorneys in and for said District, and respectfully files this Motion *in Limine* to limit or preclude the Defendant's expert testimony.

STATEMENT OF FACTS

On May 2, 2017, a federal grand jury returned a three-count Indictment charging the Defendant, Gary Mills, with filing false tax returns for the 2012, 2013, and 2014 tax years, in violation of 26 U.S.C. § 7206(1).

To convict a defendant for filing a false tax return, there are five elements that the United States must prove: (1) that the defendant made and subscribed and filed an income tax return statement or document; (2) that the tax return document or statement is verified by a written declaration that it was made under the penalties of perjury; (3) that the return was false regarding a material matter; (4) that the defendant did not believe the return document or statement was true and correct as to that material matter; and (5) that the defendant acted willfully. According to the Third Circuit Model Jury Instruction for tax offenses, "'Willfully' means a voluntary and intentional violation of a known legal duty.'" Third Circuit Model Criminal Jury Instruction 6.26.7201-4. Conduct is not willful if the defendant acted through

1

negligence, mistake, accident, or due to a good faith misunderstanding of the requirements of the law.  A good faith belief is one that is honestly and genuinely held.

On November 8, 2017, the Defendant filed a Notice Pursuant to Rule 12.2.  Dkt. # 57.  According to this filing, the Defendant indicated that he provided the government with a copy of Dr. Michael Franzen's expert report.  Additionally, this notice asserted: "The report contains evidence about the defendant's cognitive skills and is relevant to the defendant's lack of willfulness."

In the report provided to the government, Dr. Franzen provides the following conclusion:

> Mr. Mills is exhibiting symptoms of adjustment disorder in reaction to his current situation.  His adjustment disorder did not affect the test results. Mr. Mills is demonstrating below-average cognitive intellectual functioning.  In particular he has difficulty with abstract problem solving.  His memory performance was also below average and sometimes in the impaired range.  For example, his memory for verbal narrative was at the 1st percentile which is in the severely impaired range.  Of note is the fact that his academic achievement score were also low.  His ability to spell was at a 2nd grade level, and his ability to perform math computation using paper and pencil was at the 7th grade level.  His reading recognition for single words was in the 6 grade level, and his ability to understand sentences he had read was at the 8th grade level.  All this indicates that he has significant limitation in his ability to understand complex financial information.

The report does not clarify what is meant by the term "complex financial information."  Notably, Dr. Franzen's report does not speak to any mens rea elements.

On April 25, 2019, Dr. Wettstein examined Gary Mills.  Prior to the examination, Dr. Wettstein contacted undersigned counsel concerning the scope of the examination.  He expressed concern about the admissibility of such an overly broad and vague term "complex

financial information" as well as the limitations imposed in criminal cases pursuant to the Insanity Defense Reform Act and the Federal Rule of Evidence 704(b).

## LEGAL FRAMEWORK

**A. Limitations by the Insanity Defense Reform**

The Insanity Defense Reform Act of 1984 was recodified at 18 U.S.C. § 17. This section provides the following:

> It is an affirmative defense to a prosecution under any Federal statute that, at the time of the commission of the acts constituting the offense, the defendant, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his acts. Mental disease or defect does not otherwise constitute a defense.

18 U.S.C. § 17(a).

In *United States v. Pohlot,* 827 F.2d 889, 890 (3d Cir. 1987), the Third Circuit analyzed the last sentence of 18 U.S.C. § 17(a) and addressed the permissible scope of mental disease and defect evidence in criminal prosecutions where no insanity defense is sought. The Third Circuit concluded that the last sentence of 18 U.S.C. § 17(a) prohibits the defenses of diminished responsibility and diminished capacity; however, evidence of mental disease or defect is not prohibited if it serves to negate the mens rea element of a charged criminal statute. *Id.* at 890, 905-06. Specifically, evidence of a mental disease or defect is permissible to prove the defendant actually lacked the requisite mens rea and not to prove the defendant lacks the capacity to form mens rea. *Id.* at 905; *see also United States v. Bennett*, 161 F.3d 171, 180 (3d Cir. 1998) ("The mental state at issue is 'actual' mens rea – which is not a matter of the individual's mental capacity but the state of mind at the particular time in question.").

However, the Third Circuit warned that "the strict use of psychiatric evidence to negate mens rea may easily slide into wider usage that opens up the jury to theories of defense

3

more akin to justification." *Pohlot*, at 905.  As the *Pohlot* court noted, "[p]sychiatrists are capable of supplying elastic descriptions of mental states that appear to but do not truly negate the legal requirements of mens rea.  Presenting defense theories or psychiatric testimony to juries that do not truly negate mens rea may cause confusion about what the law requires."  *Id.* at 890.  As such, the Court of Appeals "direct[s] district courts to examine proffered psychiatric testimony carefully 'to determine whether the proof offered is grounded in sufficient scientific support to warrant use in the courtroom, and whether it would aid the jury in deciding the ultimate issues.'"  *Id.* at 905.  In light of this "strong danger of misuse," "[d]istrict courts should admit evidence of mental abnormality on the issue of mens rea only when, if believed, it would support a legally acceptable theory of lack of mens rea."  *Id.* at 905-06.  In deciding on the admissibility of such evidence, courts should perform this evaluation outside the presence of the jury.  *Id.*

The Third Circuit has held that "evidence of low intelligence and reading ability is generally relevant in determining knowledge and is usually a jury question."  *United States v. Hayden*, 64 F.3d 126, 134 (3d Cir. 1995).  In *Hayden*, the defendant was under a criminal information for receiving stolen property and acknowledged having received a copy of this information in the mail.  *Id.* at 127.  The defendant, nonetheless, purchased a firearm and responded "no" to a question asking whether he was "under indictment or information."  *Id.*  The defendant was charged with receiving a firearm while under a felony information, in violation of 18 U.S.C. § 922(n).  *Id.* at 128.  One of the elements that the government must prove was that the defendant acted willfully, and the court determined that willfully meant that the defendant acted with knowledge that his conduct was unlawful.  *Id.* at 132.  At trial, the district court denied the defendant's evidence concerning his low intelligence and reading ability.  *Id.* at 128.  The Third

Circuit reversed because evidence of low intelligence and reading ability was relevant to whether the defendant had knowledge he was under indictment or information, which was central to his defense. *Id.* at 134.

In *United States v. Mister*, 553 F. Supp. 2d 377, 378 (D.N.J. 2008), the District Court of New Jersey permitted expert testimony concerning the defendant's borderline to low average range of intelligence because it was relevant to whether the Defendant knew the money he accepted was a bribe or corrupt payment. In *United States v. Sacks*, 2009 WL 4114169, *6 (D.N.J. Nov. 23, 2009), the District Court of New Jersey denied the admissibility of one expert who opined that "deficiencies in concentration, persistence, and pace would have significant impact upon [Defendant's] ability to exercise good business judgment in developing business associations with others." The court determined that this type of psychological evidence does not negate the specific men rea element (i.e., intent to deceive) at issue in the case. *Id.* However, the court permitted psychological evidence concerning the defendant's borderline intellectual functioning and perceptual deficiencies. *Id.* at *7.

B. Limitations by the Rules of Evidence

The Rules of Evidence place limits on expert testimony. Federal Rule of Evidence 702 only allows for expert testimony where the testimony will help the trier of fact to understand the evidence or to determine a fact in issue. Fed. R. Evid. 702(a). Federal Rule of Evidence 704(b) provides an additional limitation in criminal cases:

> In a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact alone.

Fed. R. Evid. 704(b).

Thus, although 18 U.S.C. § 17 permits psychiatric expert's testimony concerning

5

low intelligence as it relates to the defendant's actual knowledge (i.e., mens rea) at the particular time in question, the expert is precluded from opining whether the defendant did or did not have the requisite knowledge. This applies to both defense and government experts.

In *United States v. Bennett*, the defendant was charged with filing false tax returns as well as mail, wire, and bank fraud. *Bennett*, 161 F.3d at 175. The defendant sought to introduce testimony from a mental health expert, which the government opposed. In evaluating the mental health expert's testimony, the district court had the defendant submit a list of general questions that he intended to ask his expert. *Id.* at 179-80. The district court appropriately noted that "[t]o have probative value, answers must provide sufficient fact basis for a finding of lack of actual mens rea. *Id.* at 180.

The district court first addressed the Rule 704(b) objections. The court denied a number of questions because they sought opinions to the ultimate issue, i.e., whether the defendant possessed the mental state or condition for the crime charged. Additionally, after determining that one of the questions contained vague and unclear language, the court denied this question to the extent that it sought an opinion on the ultimate issue. *Id.*

In addressing the relevancy objection, the district court noted that Rule 702's requirement that the expert testimony must assist the fact-finder by showing that the testimony, given the actual facts and circumstances, supports a legally acceptable theory of lack of mens rea. *Id.* at 181. "Merely conclusory or speculative testimony is not enough." *Id.* With respect to the filing of false tax returns, the district court provided that "[f]or a mental health expert's testimony to have probative value as to statutory willfulness, it must have some bearing, in factual terms, on issues of whether there was a voluntary, intentional violation of a known legal duty." *Id.* In *Bennett*, the defendant's expert's conclusion that the defendant

believed he was doing God's work was insufficient to negate the mens rea of statutory willfulness. *Id.* "It does not by itself tend to show that the alleged violation, here the filing of false tax returns, was not voluntary or intentional or was not a violation of a known legal duty." *Id.*

The Third Circuit upheld the district court's decision to precluded proposed questions pursuant to Rule 704(b). *Id*. at 183-85. Furthermore, because Bennett was seeking to introduce expert testimony that he lacked the mental capacity to commit the charged crime, the Third Circuit upheld the district court's decision to exclude the proposed expert testimony. *Id.* at 185.

ANALYSIS

**I.      Dr. Franzen's ultimate opinion is overly vague and inadmissible.**

Dr. Franzen concludes his report by asserting the following: "All this indicates that [Gary Mills] has significant limitations in his ability to understand complex financial information." The term "complex financial information" is not defined and is overly vague. It is unclear what this term encompasses. Based on the meaning of this term, it is highly likely that this opinion is inadmissible.

The Defendant's Notice does not establish how Dr. Franzen's opinion on "complex financial information" supports a legally acceptable theory of lack of mens rea. As noted in *Bennett,* "[f]or a mental health expert's testimony to have probative value as to statutory willfulness, it must have some bearing, in factual terms, on issues of whether there was a voluntary, intentional violation of a known legal duty." *Id.* at 181. It is unclear how Dr. Franzen's ultimate opinion concerning "complex financial information" provides some bearing on whether there was a voluntary, intentional violation of a known legal duty.

7

This prosecution involves Gary Mills reporting significantly less income than earned on his joint tax returns. Generally, such failure to report income does not seem to fall within the ambit of "complex financial information." If Gary Mills' failure to report income does not fall within the ambit of "complex financial information," then Dr. Franzen's testimony concerning "complex financial information" would be inadmissible under Rule 702 as the testimony would not be helpful to the trier of fact to understand the evidence or determine a fact in issue. For instance, if the term "complex financial information" encompasses how foreign exchange systems work, offshore accounting, cross border investments, international trade, or some other aspect of the global financial system, then Dr. Franzen's opinion does not assist the jury in determining whether Gary Mills lacked the appropriate mens rea to have filed false tax returns as set forth in the Indictment.

However, Dr. Franzen's ultimate opinion could be interpreted to mean Gary Mills lacks the capacity to form mens rea as opposed to actually lacking in the requisite mens rea.[1] Such mental health expert testimony is prohibited by 18 U.S.C. 17(b). *See Bennett*, 161 F.3d at 180 ("The mental state at issue is 'actual' mens rea – which is not a matter of the individual's mental capacity but the state of mind at the particular time in question."). Additionally, if the term "complex financial information" is interpreted broadly, it could subsume an opinion that Gary Mills did not possess the requisite mens rea. Such an interpretation would be in violation of Federal Rule of Evidence 704(b).

These problems are created by the vagueness of the term "complex financial information." Due to the "strong danger of misuse" of mental health expert testimony, the

---

[1] For instance, in his ultimate conclusion, Dr. Franzen asserts that the Defendant below average intellect impacts his "ability to understand" which could be interpreted as to mean capacity to form the requisite mens rea.

8

United States respectfully requests that the Court conduct a Rule 104 hearing, outside the presence of the jury, to ascertain what is specifically encompassed by Dr. Franzen's ultimate opinion and his use of the term "complex financial information." Once such an inquiry is made, it must be determined whether testimony concerning this "complex financial information" is admissible.

II.     **Dr. Franzen's testimony may be inadmissible under Rules 702 and 403 due to his report being silent on diagnosis and mens rea elements.**

Although mental health expert testimony concerning low intelligence is generally admissible where the government must prove that the defendant acted willfully, Dr. Franzen's report is completely silent on diagnosis and whether the Defendant actually lacked the requisite mens rea.

In *United States v. Mister*, the District Court of New Jersey addressed a similar issue. There, the district court recognized that 18 U.S.C. § 17 did not bar evidence that the defendant functioned at a below average intelligence because it was relevant to an element of the offense. *Mister*, 553 F. Supp. 2d at 388. However, "[t]he court is concerned about how useful the expert evidence of diminished intellectual functioning may be to a jury in this case, given that there is no diagnosis." *Id.* Asserting that 18 U.S.C. § 17 was only the initial step in the inquiry, the court recognized its gatekeeping obligations regarding whether such evidence should be admitted under Rules 702 and 403 of the Federal Rules of Evidence. *Id.* The court required further briefing concerning admissibility under these rules.

The *Mister* court did not find the expert's testimony inadmissible for failing to opine on whether the defendant actually had or lacked the requisite mens rea. *Id.* at 389. The court recognized that the Rule 704(b) precluded such opinion testimony during the trial. *Id.* The court also noted that, subject to Rule 702 and 403, expert's testimony is admissible as long as it

9

is relevant. *Id.*

However, the expert's ultimate opinion may be relevant to the Rule 702 and Rule 403 analysis. For instance, if Dr. Franzen's ultimate opinion is that Gary Mills' below average intellect did not result in him lacking willfulness, Rule 704(b) would preclude Dr. Franzen from providing this opinion to the jurors. In this scenario, Dr. Franzen's specialized knowledge would not be used to help the trier of fact to understand the evidence or to determine a fact in issue, rather the expert's testimony would be used to confuse and potentially mislead the jury. Such admissibility would be in contravention with Rules 702 and 403.

Here, Dr. Frazen's report is silent as to diagnosis and whether the Defendant had the requisite intent. Instead, Dr. Franzen concludes that the Defendant has significant limitations in his ability to understand complex financial information. As noted in the above section, this conclusion is vague and may be inadmissible. If inadmissible, then Dr. Franzen's testimony would only consist of Gary Mills functioning at a below average intellect. Rules 702 and 403 would caution against such evidence. Without more, merely functioning at a below average intellect does not tend to show that the alleged violation, here the filing of false tax returns, was not voluntary or intentional or was not a violation of a known legal duty. Rather, to be admissible under Rule 702 and 403, the expert's testimony would have to show that the below average intellect *impaired the Defendant in some way that is relevant to this case* (i.e., a connection to the lack of actual mens rea) without providing an opinion on whether the Defendant had the requisite intent. Thus, without evidence concerning some impairment relevant to this case, testimony of a below average intellect would simply confuse issues and would not be helpful to the trier of fact.

CONCLUSION

WHEREFORE, the United States respectfully requests that this Honorable Court conduct a Rule 104 hearing to determine the true meaning of Dr. Franzen's ultimate opinion, which is currently overly vague. Upon ascertaining the true meaning, the Honorable Court may have to determine whether this opinion is admissible and/or whether Dr. Franzen's entire testimony is admissible.

Respectfully submitted,

SCOTT W. BRADY
United States Attorney

By: *Shardul S. Desai*
SHARDUL S. DESAI
Assistant U. S. Attorney
DC No. 990299