IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | )<br>)<br>)<br>) |
| vs. | ) Crim. No. 17-122<br>) Judge Nora Barry Fischer<br>) |
| GARY MILLS, | )<br>) |
| Defendant, | )<br>) |

## MEMORANDUM OPINION

This criminal tax case wherein Defendant Gary Mills is charged with three counts of filing false tax returns in violation of 26 U.S.C. § 7206(1) is set to commence jury selection and trial on June 25, 2019 at 9:30 a.m. (Docket No. 1). The parties have stipulated that Defendant's wife, Cynthia, embezzled money from her former employer, Matthews International, during the 2012, 2013 and 2014 tax years and that the IRS determined that she stole more than $4 million during that timeframe. (Docket No. 235; Govt. Ex. S-10). The most pertinent disputes at trial will be whether Defendant knew that his income was underreported on the tax returns he and Cynthia jointly filed on April 15, 2015 (2014 return); April 15, 2014 (2013 return); and August 1, 2014 (amended 2012 return) and whether he acted willfully in violation of a known legal duty to report the income when filing the returns.

Presently before the Court is a *Daubert* challenge brought by the Government seeking to exclude Defendant's proffered expert Dr. Michael Franzen, Ph.D., a psychologist, who conducted a neuropsychological assessment of Defendant by administering a series of tests on August 30, 2017 and September 11, 2017, scored the results and reached certain conclusions as to his intellectual functioning summarized in his report dated October 30, 2017. (Docket Nos. 207; 211). The motion has been fully briefed and the Court held a *Daubert* hearing on June 5, 2019, at which

1

time Dr. Franzen testified, was subject to cross-examination by the prosecution and questioning by the Court and some additional exhibits were admitted into evidence. (Docket Nos. 207; 211; 219; 226; *Daubert Hr'g Trans. 6/5/19*). After careful consideration of the parties' positions, and for the following reasons, the Government's Motion is granted.

As the parties are well familiar with the facts of this case, about which this Court has written extensively to this point, and Dr. Franzen's report and testimony are both publicly available, the Court dispenses with a lengthy exposition of the facts and turns initially to the governing legal standards. To that end, Federal Rule of Evidence 702, which memorializes the Supreme Court's landmark case, *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), provides the basic framework for the admissibility of expert testimony:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The United States Court of Appeals for the Third Circuit has held that "Rule 702 embodies a trilogy of restrictions on expert testimony: qualification, reliability, and fit." *Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003). The district court acts as a gatekeeper, by preventing opinion testimony from reaching the factfinder that does not meet these three requirements. *Id.* However, "even reliable expert evidence meeting all other requirements of Rule 702 and *Daubert* must still comport with Rule 704(b), which expressly limits the admissibility of expert opinion evidence in criminal cases, and Rule 403." *United States v. Kubini*, Crim. No. 11-

14, 2015 WL 418220 (W.D. Pa. Feb. 2, 2015) (citing *United States v. Watson*, 260 F.3d 301, 308 (3d Cir. 2001) (precluding expert testimony under Rule 704(b)); *see also United States v. Bennett*, 161 F.3d 171, 182 (3d Cir. 1998) ("the trial judge has broad discretion to admit or exclude expert testimony, based upon whether it is helpful to the trier of fact.").

Rule 704(b) states that "[i]n a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact alone." FED. R. EVID. 704(b). "Rule 704(b) applies to all instances in which expert testimony is offered as to mental state or a condition constituting an element of the crime charged or defense thereto." *United States v. Watson*, 260 F.3d 301, 308 (3d Cir. 2001) (citation omitted). Of course, Rule 403 provides that relevant evidence, expert or otherwise, may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, or needless presentation of cumulative evidence. Fed. R. Evid. 403; *see Toledo Mack Sales & Service, Inc. v. Mack Trucks, Inc.*, 386 F. App'x 214, 218 (3d Cir. 2010) ("A district court is accorded wide discretion in determining the admissibility of evidence under the Federal Rules.").

In this Court's estimation, Defendant's expert proffer is insufficient to demonstrate the admissibility of Dr. Franzen's opinion testimony in this case under *Daubert* and Rule 702 and the evidence is otherwise subject to exclusion given that its probative value is substantially outweighed by the factors set forth in Rule 403. The Court's rationale follows, starting with the *Daubert*/Rule 702 analysis.

At the outset, the parties do not quarrel over Dr. Franzen's qualifications and, as stated at the hearing, the Court agrees that his credentials as a Ph.D., board-certified psychologist, with

significant experience in administering neuropsychological testing, who has developed such tests which were peer reviewed and published, and taught the subjects to students and professionals, is sufficiently qualified to render an expert opinion as to the type of neuropsychological testing which was administered in this case. *See Daubert Hr'g Trans. 6/5/19* at 43 ("Based on your testimony here today, your curricula vitae and what you have advised at least to this point, the court does find that you have sufficient credentials to provide testimony, particularly opinions as it might relate to the various test[s] that you performed on Mr. Mills."); Docket No. 211-2 (Dr. Franzen's curricula vitae). With that said, the Court finds that Dr. Franzen's proffered testimony fails to meet the requirements of "reliability" and "fit" such that exclusion under *Daubert* and Rule 702 is necessary.

> As this Court has recently held,
>
> > [t]he test for reliability is not correctness. *Paoli II*, 35 F.3d at 744. An expert's opinion is reliable when it is based on sound methodology and "good grounds," *Paoli II*, 35 F.3d at 744, i.e., it is "based on the methods and procedures of science rather than on [a] subjective belief or unsupported speculation," *Furlan v. Schindler Elevator Corp.*, 516 F. App'x 201, 205 (3d Cir. 2013) (quoting *Paoli II.*, 35 F.3d at 742). The Court of Appeals for the Third Circuit in *Paoli II*, enumerated eight factors that a district court may examine when determining reliability; however, it is well-settled that they "are neither exhaustive nor applicable in every case."[1] *Kannankeril v. Terminix Int'l., Inc.*, 128 F.3d 802, 806-07 (3d Cir. 1997) (citing *Paoli II*, 35 F.3d at 744). Additionally, it is important to recognize that "there are no bright-line rules requiring that an expert undertake a specific type of testing in a particular case." *Trask v. Olin Corp.*, Civ. Act. No. 12-340, 2016 WL 1181428, at *11 (W.D. Pa. Mar. 28, 2016).

---

[1] The factors include:
> (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put.

*Paoli II*, 35 F.3d at 742 n. 8.

*Fed. Trade Comm'n v. Innovative Designs, Inc.*, No. 2:16-CV-01669-NBF, 2019 WL 1922485, at *2 (W.D. Pa. Apr. 30, 2019). The Court accepts that the tests which were administered to Defendant are generally utilized by professionals in the field when conducting neuropsychological assessments of individuals but questions the reliability of the methods employed by Dr. Franzen in reaching his conclusions in this case for several related reasons.

First, the reliability of the methods Dr. Franzen employed in this case is undermined because his conclusions are based upon an insufficient record, given his reliance upon a summary of the case from defense counsel, a single academic record from 1978 and a self-report from Defendant during an hour and a half interview conducted nearly two and ½ years after the criminal conduct in this case, (i.e., last criminal act on April 15, 2015 and first interview on August 30, 2017). (Docket No. 211-1, Expert Report; *Daubert Hr'g Trans. 6/5/19*). Dr. Franzen admitted that he departed from his typical practices in that he usually reviews medical records (at least partial medical records) and sometimes employment and academic records when conducting these types of assessments, depending on the case. *Daubert Hr'g Trans. 6/5/19* at 33, 35-36). The evidence introduced at the hearing also revealed that some of Defendant's self-reported information was simply inaccurate. For example, Dr. Franzen testified that Defendant told him that "his wife handled the taxes" and he "wasn't involved in the family financials" when the record demonstrates that he was involved with the accountants who produced the couple's returns, so much so that he is seeking an instruction that he relied in good faith on the advice of his accountants. *Daubert Hr'g Trans. 6/5/19* at 72. Defendant also responded that he "never" makes decisions that get him into trouble (legally, financially, socially) at a time when he was under a

5

federal indictment for allegedly filing false joint tax returns with his wife.[2] *See* Def. Ex. A. at ¶ 43. On the timing issue, Dr. Franzen stated that aside from testing Defendant at the time he allegedly engaged in the criminal acts, April of 2014 through April of 2015, which he did not do, there was "nothing that could be done" in order "to figure out what [Defendant's] cognitive abilities were three years earlier." *Daubert Hr'g Trans. 6/5/19* at 37. While he explained that Defendant's age and background would not indicate that a substantial change was likely to occur, he did not specifically express what he was relying upon to reach those conclusions. *See id.* As another example, he attempted to verify the IQ results from the more recent testing based on similar figures set forth in the 1978 academic record but admitted that the Otis Lennon test which was apparently utilized by the school to reach those results had fallen out of favor with professionals in his field. *Daubert Hr'g 6/5/19* at 28.

Second, and more importantly, Dr. Franzen did not express that the test results and his corresponding opinions as to Defendant's cognitive functioning and malingering were made to a reasonable degree of neuropsychological certainty, as he admitted he has done in other legal engagements. *See Daubert Hr'g Trans. 6/5/19* at 30 ("The Court: So you've expressed opinions to a reasonable degree of psychological certainty in either a civil case or a workers' comp case on the issue of malingering; is that right? THE WITNESS: That is right.").

> Of course, an expert need not use "the talismanic phrase that their opinion is given to 'a reasonable degree of medical certainty,' because '[c]are must be taken ... to see that the incantation does not become a semantic trap and the failure to voice it is not used as a basis for exclusion without analysis of the testimony itself.'" *Holbrook v. Lykes Bros. S.S. Co.,* 80 F.3d 777, 785 (3d Cir. 1996) (quoting *Schulz v. Celotex Corp.,* 942 F.2d 204, 208 (3d Cir. 1991)). In that regard,
>
> while the particular phrase used should not be

---

[2] On a related note, Defendant told the Court at the final pretrial conference that the only social media he used was match.com and that he had no further educational training after graduating from Langley High School in 1978.

> dispositive, it may indicate the level of confidence the expert has in the expressed opinion. Perhaps nothing is absolutely certain in the field of medicine, but the intent of the law is that if a physician cannot form an opinion with sufficient certainty so as to make a medical judgment, neither can a jury use that information to reach a decision.
>
> *Id.* (quoting *Schulz,* 942 F.2d at 209). The Third Circuit thus explained that "'[s]ituations in which the failure to qualify the opinion have resulted in exclusion are typically those in which the expert testimony is speculative, using such language as possibility.'" *Id.* (quoting *Schulz,* 942 F.2d at 208).

*United States v. Donahue*, No. 3:11-CR-0033, 2015 WL 1786174, at *3 (M.D. Pa. Apr. 20, 2015). Here, Dr. Frazen failed to expressly state in his report or during his testimony that the results of his testing of Defendant were made to a reasonable degree of neuropsychological certainty or some other professional standard. (Docket No. 211-1; *Daubert Hr'g Trans. 6/5/19*). He also explained that the type of testing he administered and the results obtained relied heavily upon the effort expended by Defendant during the examination process, which makes assessing whether he was malingering – or "trying to make [himself] look bad in order to gain some sort of advantage or benefit" – an important part of confirming or verifying the results of the testing. *Daubert Hr'g Trans. 6/5/19* at 29. As was discussed at the hearing, malingering is a topic of significant interest to Dr. Franzen who has published articles on the subject, but he offered only bare bones conclusions as to whether Defendant was malingering, stating simply that he "did not appear to be malingering on the tests," *Daubert Hr'g Trans. 6/5/19* at 53, without expressing that this opinion was to a reasonable degree of neuropsychological certainty or any other standards accepted by professionals in his field of expertise. In this Court's estimation, an expert conducting a neuropsychological assessment of a defendant under federal indictment and facing trial, with an obvious incentive to malinger while taking the tests, must express his opinions with greater

confidence in order to demonstrate that such opinions are sufficiently reliable to be presented to a jury.

Third, the reliability of Dr. Franzen's opinions are subject to question given his concession that his report contains a mathematical error in the expression of the confidence interval supporting the IQ results noted in the report. *Daubert Hr'g Trans. 6/5/19* at 100. Defendant has also withdrawn his opinion that Defendant "has significant limitations in his ability to understand complex financial information," an opinion which Dr. Franzen conceded was equally applicable to himself with his extraordinary academic credentials and he reached without seeking any additional information about Defendant or his finances beyond the self-report from the hour and a half long interview. While these are the types of deficiencies which are generally explored on cross-examination, they also bear on the reliability and admissibility of same, particularly when considered with the limited records reviewed by Dr. Franzen, his heavy reliance upon a self-report from Defendant, and his failure to state that his opinions were to a reasonable degree of neuropsychological certainty or some other standards.

For all of these reasons, the Court does not believe that Defendant met his burden to show that Dr. Franzen's opinions rested on "good grounds" and are based on sufficiently reliable methods to present to a jury.

The instant proffer also fails under the "fit" element, pursuant to which the proponent of the evidence must demonstrate that "such evidence 'speaks clearly and directly to an issue in dispute in the case, and that it will not mislead the jury.'" *United States v. Ford*, 481 F.3d 215, 219, n. 6 (3d Cir. 2007); *see also Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003) ("Rule 702 requires that the expert testimony must fit the issues in the case. In other words, the expert's testimony must be relevant for the purposes of the case and must assist the trier

of fact."). Again, at issue in this case are Gary Mills' knowledge of the false statements in the tax returns and whether he acted willfully. He is defending this case by arguing that he was unaware of his wife's embezzlement, that he relied upon his accountants to accurately prepare the couple's joint returns and claims that he signed the returns upon their advice without meaningfully reading them. Hence, the Court questions how post-indictment testing of Defendant's cognitive skills for reading comprehension, arithmetic or abstract problem solving – all tasks that he and his bride hired an accountant to undertake -- directly relate to any of these issues. The Court is simply not persuaded by the precedent cited by the defense that the proffered expert evidence "fits" this case.

In addition, as the Government points out, Dr. Franzen did not diagnose Defendant with any intellectual disability and the most relevant opinion that he offered regarding the Defendant's alleged inability to comprehend complex financial information has been withdrawn by the defense. *Daubert Hr'g Trans. 6/5/19* at 50, 55. Dr. Franzen also failed to offer an opinion, to a reasonable degree of neuropsychological certainty, regarding Defendant's cognitive functioning at the time he allegedly committed the charged crimes between April 2014 and April 2015. *See Donahue,* 2015 WL 1786174, at *3. Overall, the Court holds that the proffered expert evidence does not meet the requirement that it "fit" the case and there is a significant risk that such evidence would be misleading to the jury. *See Ford,* 481 F.3d at 219, n. 6.

Having determined that Defendant has not demonstrated that the proffered expert evidence meets the requirements of "reliability" and "fit," the Court will exclude such evidence from trial.

Next, "[e]xpert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses." *Daubert,* 509 U.S. at 595. Even if the Court had concluded that the proffered

9

expert evidence met the standards for admissibility under *Daubert* and Rule 702, the Court would still exclude it under Rule 403 because the low probative value of such evidence is substantially outweighed by those factors. It is this Court's opinion that the hours-long *Daubert* hearing demonstrated that the presentation of this expert witness (and the Government's expected rebuttal from Dr. Robert Wettstein) would thoroughly confuse the issues in this case, mislead the jury and waste a considerable amount of time in what the parties agree is a complex matter which will require the trial to extend into three weeks given the intervening holiday and other matters on the Court's schedule. In short, the admission of the proffered expert evidence would undoubtedly result in two days of testimony about the various neuropsychological tests and results, and the experts' competing interpretations of same, leading to disputes over confidence intervals, IQ testing methods and other matters which have little to do with this case and would serve only to distract the jurors from reaching their verdict. *See United States v. Gilliard,* 133 F.3d 809, 815 (11th Cir. 1998) ("Although the actual number of hours and minutes it would take to put on expert testimony should not ordinarily be a controlling factor, a court may consider whether the amount of time needed to present the evidence would shift the focus of a criminal trial from determining guilt or innocence to determining the validity of the scientific method at issue.").

      For all of these reasons, the Government's Motion is granted. An appropriate Order follows.

*s/Nora Barry Fischer*
Nora Barry Fischer
U.S. District Judge

Dated: June 13, 2019

cc/ecf: All counsel of record

      Gary Mills c/o Jed Silversmith, Esq.